## NICKELSBURG et al. v. COMMERCIAL CREDIT CO. OF BALTIMORE.

(Circuit Court of Appeals, Third Circuit. July 14, 1924.)

No. 3127.

**1. Fraud ⬩⬩52—Evidence as to matters occurring subsequent to fraud held inadmissible.**

In an action for deceit in obtaining advances from plaintiff under a contract for purchase of bills receivable by means of forged documents showing shipments of merchandise on sales, evidence as to subsequent shipment of the goods, reason for customers' refusal to receive them, etc., *held* immaterial.

**2. Fraud ⬩⬩57—Evidence that goods were turned over to plaintiff held admissible in mitigation of damages.**

In an action for deceit in obtaining advances under contract on forged shipping documents, evidence that goods were subsequently turned over to plaintiff and sold *held* admissible in mitigation of damages and erroneously excluded.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, District Judge.

Action at law by the Commercial Credit Company of Baltimore against Max C. Nickelsburg and Albert L. Rosenberg. Judgment for plaintiff, and defendants bring error. Reversed.

McDermott, Enright & Carpenter, of Jersey City, N. J. (James D. Carpenter, of Jersey City, N. J., of counsel), for plaintiffs in error.

Bilder & Bilder, of Newark, N. J. (David H. Bilder, of Newark, N. J., of counsel), for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and DICKINSON, District Judge.

WOOLLEY, Circuit Judge. This writ of error is directed to a judgment entered on a verdict against Nickelsburg and Rosenberg, officers of Nickelsburg Brothers Company. All assignments of error, except those which go to the court's refusal to direct a verdict for the defendants, concern rulings of the court on the evidence. No complaint is made of the charge.

The facts of the case, briefly stated, are these:

Nickelsburg Brothers Company was a corporation engaged in tanning and finishing leather. Lacking capital, it entered into a

contract with the Commercial Credit Company of Baltimore whereby the latter concern agreed to purchase from the former its accounts receivable upon assignments accompanied with invoices and shipping papers, paying therefor a certain percentage of their face and reserving the balance, when collected, as a reserve fund to cover losses. The credit company's profits came from interest charges.

Transactions were many and rapid. Under their practice, the tanning company, at the end of each day, mailed assigned accounts with invoices and shipping documents to the credit company, and the credit company, without inquiring into the accounts, immediately upon their receipt forwarded money to the tanning company. Under this arrangement the parties did business for quite a while, resulting inevitably in some of the accounts proving bad and the credit company reimbursing itself from the reserve fund. Each assignment contained an express warranty on the part of the tanning company in the following words:

"This is to certify that the persons named below are indebted to the undersigned [Nickelsburg Brothers Company] in the sums set opposite their respective names for goods sold, shipped and delivered. * * * In consideration of the prompt purchase and remittance by the second party [the Credit Company] for such of the above accounts as are acceptable to second party without waiting to make a complete credit investigation thereof, the undersigned hereby warrants that * * * the above schedule correctly set forth undisputed accounts now owing to the undersigned for bona fide sales and deliveries of merchandise as specified by the buyer (not shipments on consignment). There are no offsets, contra accounts or counterclaims against any of them. * * * The accounts as above set forth are hereby purchased and paid for by the second party upon the faith of each of the above warranties of the undersigned."

Hazardous as business of this kind doubtless is, this case did not arise out of transactions regularly pursued under the contract. It arose from conduct of the tanning company where, in its haste to obtain funds, one of the defendants signed the assignments in blank and a shipping clerk, not by mistake but as a part of his routine duties, forged the name of the agent of an express company to express receipts when no goods had in fact been consigned for shipment. The assignments were then filled in by another clerk and were forwarded with the accompanying invoices and forged shipping documents to the credit company which, not doubting the validity of the papers showing sales and deliveries, promptly made the money advances it had promised in the contract. Later, goods described in the assigned accounts were shipped by freight to customers. In five instances the customers either declined to receive the goods or, receiving them, afterwards returned them, or finally refused to pay for them. Exposure followed and the credit company brought this suit.

[1] Trouble between counsel for the defendants and the court (in perfectly good temper) arose almost at the beginning of the trial and persisted to the end, obviously due to their different conceptions of the nature of the action. The learned trial judge regarded the action, quite correctly, to be for deceit, and when evidence of acts of deceit was admitted he limited the defendants' reply to those acts. Counsel for the defendants, frankly admitting that the action is for deceit and not in assumpsit on the express warranty, nevertheless tried the case as though it were on the warranty and insisted that, on proffer of testimony, he had a right, not to disprove the forgeries for these he admitted, or to disprove the effect of the forgeries as the means by which the credit company was induced to part with its money, but to prove that the goods named in the forged express receipts were, some days later, sent to customers by freight. He also claimed the right to prove the reasons for such subsequent transactions and also to prove controversies which followed between the tanning company and its customers with reference to the quality of the goods and their refusal either to receive or retain them. This action is not one of assumpsit against the tanning company but is for deceit against two of its officers, and as the deceit is based on admittedly forged shipping documents, we cannot understand how such evidence, if admitted, could affect the deception practiced, or in other words, could exonerate the defendants of fraud in using forged documents to obtain money from the credit company which was not payable under the contract. The jury found that the credit company was induced to advance its money (contrary to the terms of the contract) through deception as to sales and deliveries worked by the forged documents. The deception being complete, it did not matter what transactions followed between the tanning company and its customers. The credit company was induced to part with money by fraud. Such subsequent transactions, no matter how bona

fide, could not cure this fraud or restore the money.

One transaction differed from the others in that the means of deception was not a forged shipping document but an invoice with a wrong date. The deception, however, was equally effective. On February 19, 1923, the tanning company assigned to the credit company an account receivable of the International Luggage Company accompanied with a valid express receipt and an invoice dated February 17, 1923, which on its face was evidence, such as the contract called for, that the goods had been sold and delivered on that date. The plaintiff's testimony tended to prove no such sale and delivery. In reply the defendants offered in evidence a receipt given the express company by the customer, with the date altered from 17 to 27 or from 27 to 17 and proposed to prove that the goods were received on February 27, 1923, ten days after the claimed date of shipment and delivery. The court excluded this testimony on the theory that, if true, it was a matter occurring after the deception had been completed and therefore it was not relevant.

We think the learned trial judge grasped the correct theory of the case and committed no error in his rulings on this line of testimony. Lembeck v. Gerken, 86 N. J. Law, 111, 90 Atl. 698; Southern Development Co. v. Silva, 125 U. S. 247, 8 Sup. Ct. 881, 31 L. Ed. 678; 12 R. C. L. 239.

The next question is whether the court erred in declining the defendants' motions for a directed verdict in their favor. Nothing is to be gained by reviewing at length the evidence on which these motions were based. It is sufficient to say there was enough to connect both defendants—stockholders, directors and officers of the tanning company and managers of its business—with the transactions and enough to justify submitting the case to the jury.

With equal brevity we dispose of the defendants' contention that the credit company bought the accounts receivable in question with money of the tanning company it was holding in the reserve fund. The size of the reserve fund is a matter under the contract and a matter not involved in this action for deceit. Whether there was more money in the reserve fund than the total of the moneys which the credit company advanced on the forged receipts is not a question of present concern. The defendants did not perpetrate fraud for the purpose of obtaining the money of their own company.

[2] In one of the transactions—assignment of an account of the South River Shoe Company—the defendants offered to prove that the merchandise covered by the forged documents was afterwards turned over to the credit company and by it sold to recoup its losses. This was a tender of proof in mitigation of damages. The learned trial judge, adhering to the line of his previous rulings, rejected this testimony. In doing so we think he fell into error for this testimony bore not on the issue of deceit but on the issue of damages alone.

On this one ground we are constrained to reverse the judgment below.